STATE OF WEST VIRGINIA

*In re* N.C.-1

No. 19-0615 (Wood County 18-JA-6)

FILED
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father N.C.-2., by counsel Eric K. Powell, appeals the Circuit Court of Wood County's June 5, 2019, order terminating his parental rights to N.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Debra L. Steed, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his parental rights and in denying his motion for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2018, the DHHR filed an abuse and neglect petition against petitioner and N.C.-1's mother due to the birth of a drug-exposed infant, who is not at issue in this appeal.[2] The petition alleged the mother tested positive for methamphetamine, amphetamine, and benzodiazepine during a drug screen taken contemporaneously with the infant's birth. As such, the mother's substance abuse constituted an imminent danger to the older child, N.C.-1. Further, the

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as N.C.-1 and N.C.-2, respectively, throughout this memorandum decision.

[2] N.C.-2 is not alleged to be the father of the infant, who is not at issue in this appeal.

1

DHHR alleged that petitioner was homeless and had untreated mental health issues which rendered him unable to provide shelter or care to N.C.-1 after the mother's substance abuse was discovered. As noted, petitioner was homeless at the filing of the petition and his address was listed as unknown. In response, the circuit court ordered the DHHR to publish the initial order upon filing of the petition "in accordance with the West Virginia Code to effect appropriate service" on petitioner. The circuit court also ordered the DHHR to begin providing services to petitioner as soon as possible, including convening a multidisciplinary treatment team ("MDT"). "All parties," including petitioner, were ordered to participate with the MDT, and any reports were to be provided to the circuit court prior to any hearing.

Beginning in January of 2018, the circuit court held a series of preliminary and adjudicatory hearings. Petitioner was not present at these hearings but was represented by counsel. The circuit court granted several motions by petitioner's counsel to continue these hearings because petitioner was absent and his location was unknown. At one such hearing, in July of 2018, the circuit court ordered petitioner to submit to paternity testing. In August of 2018, the DHHR informed the circuit court that it had been unable to obtain the necessary biological sample from petitioner. The circuit court ordered arrangements to collect the sample from petitioner, who was located—for the first time in the entire proceedings—because he had been recently incarcerated. In October of 2018, petitioner was released from incarceration and made his first appearance in person for a status hearing.

In December of 2018, the DHHR filed an amended petition against petitioner, asserting that in the eleven months since the initial petition was filed, petitioner had not had any contact with N.C.-1 and had not otherwise attempted to contact the DHHR to inquire about him. The DHHR further alleged petitioner failed to provide the necessary financial support for the child as well as any food, clothing, or shelter. Petitioner also failed to provide medical, educational, or emotional support. As a result, the DHHR alleged that petitioner "had demonstrated his settled purpose to forego his parental rights and duties" to N.C.-1. In its initial order upon the filing of the amended petition, the circuit court again ordered petitioner to participate in an MDT, with any reports to be presented at future hearings. Petitioner was homeless and could not be located again upon the filing of the amended petition, and the circuit court ordered the DHHR to publish notice to effect appropriate service in accordance with the law.

Later, in December of 2018, petitioner made another in-person appearance in the proceedings. The circuit court granted a motion from the DHHR to continue the hearing in light of the recently filed amended petition. In January of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated that he was "homeless and unable to provide care or shelter" to N.C.-1 and suffered from "untreated mental health issues rendering him unable to provide care." Additionally, petitioner stipulated he had "not had any contact with the minor child, [N.C.-1]" in the eleven months that the petition was pending. Petitioner further stipulated he had not contacted anyone at the DHHR "to find out how [N.C.-1 was] doing," where he had been placed, "or if he [could] see him." Finally, petitioner stipulated that he "failed to provide the necessary financial support," as well as any "food, clothing, or shelter." Petitioner did, however, agree "to address parenting skills so that the child may be reunited with the family." Accordingly, in its adjudicatory order, the circuit court found petitioner to be an abusing parent and granted him a six-month post-adjudicatory improvement period. Petitioner agreed in his stipulation that "issues and deficiencies

to be addressed" included parenting and adult life skills; being a protective parent; substance abuse; psychological evaluation and/or parental fitness evaluation; and other issues to be determined by the MDT. In granting his improvement period, the circuit court also ordered petitioner to perform a drug screen and participate in future, conditional drug screening.

On January 14, 2019—the day the circuit court granted him an improvement period—petitioner failed to appear for his required drug screen. When petitioner complied the next day, he tested positive for methamphetamine. Petitioner was then arrested for a bond violation and incarcerated on January 18, 2019, and he remained incarcerated until his status hearing in March of 2019. At the status hearing, the DHHR moved for petitioner's improvement period to be terminated and the matter set for disposition. The DHHR argued that petitioner was not complying with the terms of his improvement period, largely as a result of his incarceration just two days after the circuit court granted him an improvement period. Due to his incarceration, petitioner did not participate in a psychological evaluation, secure housing, obtain health insurance, attend parenting or life skills classes, visit with N.C.-1, submit to a substance abuse evaluation, participate in drug screens, or attend individual therapy. Despite his noncompliance, petitioner asked to continue in his improvement period "if he was accepted into drug court or at least participate in services until the next hearing. The circuit court ordered petitioner to continue in his improvement period and set a status hearing for two weeks later.

In April of 2019, the circuit court held a status hearing. The DHHR again moved for petitioner's improvement period to be terminated and the matter set for disposition. Petitioner moved for a continuance. At the hearing, the circuit court learned that petitioner had been denied entrance into drug court. The circuit court found petitioner was "not complying with the terms of his post-adjudicatory improvement period," ordered it terminated, and set the matter for disposition.

In June of 2019, the circuit court held a final dispositional hearing where the DHHR sought termination of petitioner's parental rights. The circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given petitioner's "lack of participation prior to his incarceration; his inability to take real steps to rectify the issues that led to the abuse and neglect while he was incarcerated; and the speculative nature of whether or not he will in fact be paroled." The circuit court further considered the "almost year [-]and[-a-]half [petitioner] has not had any contact" with N.C.-1 and found that "although a bond may have existed in the past" between petitioner and the child "that bond does not remain." Accordingly, the circuit court terminated petitioner's parental rights to the child and denied his motion for post-termination visitation.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[3]The mother's parental rights were also terminated. The permanency plan is for the child to be adopted by his current foster family.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first alleges that the circuit court erred in terminating his parental rights because the DHHR "did not make reasonable efforts to preserve . . . the family, or to provide petitioner with services during his improvement period." Petitioner also argues that "since the court granted [an] improvement period with knowledge of [p]etitioner's incarceration it naturally follows that the [circuit] court expected the DHHR to provide him services while in jail." In light of this, he argues that the circuit court erred in terminating his parental rights. We disagree.

Petitioner is correct that, unless certain conditions not applicable to this appeal exist, the DHHR is required to make "reasonable efforts to preserve and reunify the family." W. Va. Code § 49-4-604(b)(6)(C)(iv). Further, "[i]n determining whether or not parental rights should be terminated, the court shall consider the efforts made by the department to provide remedial and reunification services to the parent." *Id.* at (b)(6)(C).

Here, petitioner's allegation that the DHHR failed to provide him services because he was granted an improvement period confuses the statutory role of the DHHR in abuse and neglect cases generally. Indeed, the record shows that the DHHR's attempts to provide petitioner with services began as early as the filing of the initial petition in January of 2018. Petitioner's case began with a case plan, including an MDT where the circuit court ordered his participation. Even without petitioner's input or attendance, the MDT and DHHR continued attempts to provide services throughout the case. The circuit court ordered petitioner to submit to random drug tests and paternity testing. Petitioner failed to comply with these orders. For instance, petitioner did not participate in paternity testing on his own accord. This resulted in the circuit court requiring that necessary arrangements be made to collect a sample from him and conduct the testing. Additionally, petitioner failed to participate in a required drug screen on the very day he was orally granted an improvement period. When petitioner did finally participate the following day, he tested positive for controlled substances. All the while, the circuit court found that the DHHR was continuing in its efforts to reunify N.C.-1 with petitioner throughout the proceedings, and held several hearings for petitioner, despite his absence. As such, petitioner is incorrect to assert that the granting of an improvement period was a triggering event mandating the DHHR to provide services, when the record shows that the DHHR attempted to provide remedial services from the outset of the case.

Petitioner was also receiving these services when he was granted an improvement period. The circuit court first orally granted petitioner an improvement period at a hearing on January 14,

2019, after accepting his stipulation of neglecting N.C.-1. Petitioner was not incarcerated and appeared in person for the hearing. When the circuit court granted petitioner an improvement period, it was expected that petitioner would begin compliance right away. Indeed, the circuit court readily expected petitioner to start abiding by the terms of his improvement period when it ordered a drug screen on the same day the circuit court granted his improvement period. Petitioner, however, failed to appear. When petitioner took a screen the following day, he tested positive for methamphetamine. Then, on January 16, 2019—just two days after the circuit court orally granted petitioner an improvement period—he was arrested for a bond violation. Thereafter, petitioner remained incarcerated until his improvement period was terminated by the circuit court in April of 2019.

Petitioner notes that he was already incarcerated when his improvement period formally began by court order on January 18, 2019. Petitioner argues that because he was incarcerated when his improvement period began, the DHHR had a duty to provide services while he remained incarcerated. Petitioner, however, misstates and conflates the DHHR's statutory duty to provide reunification services in such proceedings generally and the individual burden that rests on petitioner to comply with an improvement period. As noted above, it is the duty of the DHHR to make reasonable efforts to reunify the family, absent certain circumstances. Conversely, it is within the discretion of the circuit court to grant an improvement period and, if granted, is conditioned on petitioner's ability to fully participate in the improvement period. *See* West Virginia Code § 49-4-610(4)(A) (parents "shall be responsible for the initiation and completion of all terms of the improvement period"). Petitioner asserts that "[n]o parent can comply with services that are not offered to him" and "the very granting of an improvement period is a directive to the WVDHHR to comply with its statutory duties." Both statements are incorrect. As noted above, the DHHR complied with its duty to provide petitioner services and did so before his improvement period was ever granted. Further, petitioner fails to address his statutory duty to complete all terms of his improvement period.

Petitioner even recognized his incarceration was a barrier to participating in his improvement period when he asked the circuit court in March of 2019 to continue his improvement period until he was admitted into drug court. While the DHHR opposed petitioner's request, the guardian ad litem supported it at the time, believing "that [petitioner] would be released to participate in drug court." Despite the DHHR's objection, the circuit court agreed and continued petitioner's improvement period. Petitioner, however, was never admitted into drug court and remained incarcerated throughout the proceedings. At the dispositional hearing terminating petitioner's parental rights, the circuit court considered petitioner's incarceration and "the speculative nature of whether or not he will, in fact, be paroled later this year" as a factor in terminating his rights. Additionally, Rule 5 of the Rules of Procedure for Child Abuse and Neglect Proceedings is clear that "[u]nder no circumstances shall a civil child abuse and neglect be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." As such, petitioner's indefinite incarceration proved an insurmountable barrier to participating in his improvement period. Based on the foregoing, we find no error in regard to either the DHHR making reasonable efforts to reunify the child with petitioner or in the termination of petitioner's improvement period due to his noncompliance.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5), however, the evidence set forth above supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. The circuit court considered several factors when terminating petitioner's parental rights, including his "lack of participation prior to his incarceration; his inability to take real steps to rectify the issues of abuse and neglect while he was incarcerated; and the speculative nature" of whether he would be released on parole. The circuit court also considered the "length of time," specifically the "almost year[-]and[-a-]half" that petitioner had no contact with the child. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (citations omitted).

With these parameters in mind, the record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect. Notably, petitioner does not dispute the circuit court's finding that he had a "lack of participation" in the case prior to his incarceration. He only argues that he had not been properly served notice, despite the circuit court's attempts to effectuate service.[4] Petitioner also does not dispute that he made no attempts to contact N.C.-1, during the eleven months when the first petition was pending. Further, petitioner failed to avail himself of the DHHR's services in the proceedings prior to his incarceration. Even once incarcerated, petitioner "did not request in person or through counsel . . . services be provided at the jail or that he be transported to attend those services." Despite this, petitioner claims that he should have been granted a less-restrictive disposition because he might eventually be able to correct the conditions of abuse and neglect, but we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[4]Petitioner argues the initial petition was not served on him and "it is unclear if or when it was ever served on him." As discussed previously, petitioner was homeless throughout much of the proceedings and thus his address was listed as unknown. The circuit court, however, twice ordered the DHHR to publish the matter "in accordance with the West Virginia Code to effect appropriate service" on petitioner. Additionally, it is undisputed that petitioner had actual notice of the proceedings as early as October of 2018. The record shows that despite this notice, petitioner failed to participate in services for the intervening three months prior to his incarceration.

6

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

Additionally, while the circuit court clearly set out its reasons for terminating petitioner's rights in its dispositional order, as set forth above, petitioner contends that the circuit court "failed to make findings . . . in its dispositional order regarding the efforts made by the WVDHHR to assist the [p]etitioner and preserve the family ties as required." Based upon a review of the record, the circuit court did not specifically make findings regarding the DHHR's reunification efforts in its dispositional order. However, the record shows that the circuit court did make these findings when it terminated petitioner's improvement period and set the matter for disposition. We have held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). For the reasons discussed above, we find that the circuit court's failure to make a finding of the DHHR's reunification efforts in its dispositional order does not constitute a substantial disregard of the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes to warrant vacating and remanding the matter. The circuit court made findings of the DHHR's reunification efforts shortly before disposition when petitioner's improvement period was terminated. Thus, petitioner is entitled to no relief.

Next, petitioner argues that the circuit court erred by failing to grant him post-termination visitation because the DHHR "significantly contributed to any decrease in the bond between petitioner" and N.C.-1. We disagree.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found that post-termination visitation was denied "for the same reasons" that support termination of petitioner's parental rights. Specifically, the circuit court found that "although a bond may have

existed in the past . . . that bond does not remain at this point." While petitioner blames the DHHR for not seeing the child during his incarceration, this ignores the fact that petitioner did not see N.C.-1 during the entire abuse and neglect proceeding. Additionally, it is unclear to this Court how petitioner is able, on the one hand, to assert that he "established a father-child relationship" with the child by virtue of having lived with him at various times between 2011 and 2017, yet recognize that he took no steps to be legally recognized as the child's father at any time. We are also unpersuaded by petitioner's assertion that he had not seen the child since January of 2018 because "[n]ot coincidentally, January of 2018 is when the original [p]etition was filed," while at the same time asserting "there was no proof that [he] knew where his son was." It strains credulity to assume that someone who claims to have a strong father-child relationship would find that child missing after removal due to emergency circumstances and then take no steps to locate the child or otherwise establish paternity so that their parental rights could be formally recognized and protected. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 5, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison